[Civ. No. 18677. First Dist., Div. One. Feb. 8, 1960.]

HOLLAND FURNACE COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Appellant.

Stanley Mosk, Attorney General, James E. Sabine, Assistant Attorney General, Ernest P. Goodman and Harry W. Low, Deputy Attorneys General, for Appellant.

Bronson, Bronson & McKinnon for Respondent.

DUNIWAY, This case presents but one question: whether respondent taxpayer's claim for refund of certain sales and use taxes paid by it was filed within the time prescribed by law. We hold that it was not.

The facts are stipulated. Holland Furnace filed tax returns for quarters ended September 30, 1953, to June 30, 1956, and paid the tax it reported as due. Actually, Holland Furnace had overpaid its tax for some of the quarters. On January 30, 1957, the board notified Holland Furnace by a notice of determination that additional taxes were due. Holland Furnace filed a petition for redetermination on February 26, 1957, within 30 days of the service of the notice of determination. The petition for redetermination was considered and treated by the board as a claim for refund.

The redetermination by the board showed that Holland Furnace both overpaid and underpaid its taxes, but that there were greater amounts of overpayments and thus no additional tax was due. The board, on November 1, 1957, gave notice to Holland Furnace of the overpayment and notice that the determination was made in error. Holland Furnace filed a formal claim for refund on November 14, 1957, in which it claimed refund of all overpayments found by the board to have been made. The board thereafter refunded to Holland Furnace overpayments for the quarters ended March 31, 1954, to June 30, 1956, but not for the quarters ended September 30, 1953, and December 31, 1953. The board ruled that even when Holland Furnace's petition for redetermination was treated as a claim for refund so as to allow it the maximum refund, a refund of the overpayments for the quarters ended September 30, 1953, and December 31, 1953, were

barred under the board's interpretation of section 6902, Revenue and Taxation Code. This was because the claim was filed February 26, 1957, which was not within three years from the last day of the month following the close of either of the two quarterly periods in question.

The controlling section of the Revenue and Taxation Code is 6902, which reads in part: "No refund shall be approved by the board (1) after three years from the last day of the month following the close of the quarterly period for which the overpayment was made, (2) *or, with respect to determinations made under Articles 2 or 3 of Chapter 5 of this part, after six months from the date the determinations become final,* (3) or after six months from the date of overpayment, whichever period expires the later, unless a claim therefor is filed with the board within such period." (Emphasis and numerals added for purposes of clarifying the discussion that follows.) Under section 6905, failure to file a claim within the time prescribed constitutes a waiver of any demand against the state on account of overpayment.

Article 2 (§§ 6481-6488), which is applicable to this case, empowers the board to make a deficiency determination against a taxpayer when dissatisfied with the latter's return or with the amount of tax required to be paid. Article 3 (§§ 6511-6515) authorizes the board, where no return has been filed, to determine upon the basis of estimation the amount which the taxpayer is required to pay.

Both articles clearly deal with a situation in which the board determines that the taxpayer is required to pay additional tax—that his previous payment, if any, is deficient. The board's power to do this (except in cases of fraud or when no return has been filed) is limited by section 6487 "within three years after the last day of the calendar month following the quarterly period for which the amount is proposed to be determined or within three years after the return is filed, whichever period expires the later." The time may be extended by agreement with the taxpayer (§ 6488). There is nothing in either article 2 or article 3 dealing in any way with the situation of a taxpayer who has paid too much. As we shall see, that is covered by other provisions of the code.

The general scheme of the law is one of self-assessment— the taxpayer must make a return on which he discloses the amount of his liability as determined by him, and must pay the tax so determined. (Chap. 5, art. 1, §§ 6451-6459.)

A taxpayer may be in error in his computation, as Holland Furnace was in this case, and for that reason pay too much. The Legislature has recognized this fact, and set up machinery whereby he can get back the overpayment. (Chap. 7, arts. 1 and 2, §§ 6901-6937.) The first part of section 6902 (numbered (1) by us) deals with this situation, and gives the taxpayer precisely the same time within which to move as the board has to seek additional taxes (§ 6487, *supra*), except that, under the latter section, the board's time is extended by delay of the taxpayer in filing his return, by his failure to file a return, or by his fraud—extensions brought about by the taxpayer himself.

It is equally possible that, when the board acts to claim a deficiency under article 2 or 3 of chapter 5, it may be in error. The Legislature has provided a means whereby this question can be decided and, if the board did err, the taxpayer can get back (that is, obtain a "refund") whatever additional amount he may have paid by reason of the board's error in making the determination of deficiency. (Chap. 7, arts. 1 and 2, §§ 6901-6937.) The six months' period specified in the second part of section 6902 (numbered (2) by us) applies to this situation. That is why it refers to a *"refund . . . with respect to determinations made under Articles 2 or 3 of Chapter 5 . . ."* (Emphasis added.) But we can find nothing in the section itself, or in any other provision of the code cited by respondent, that can lead to the conclusion claimed by respondent, namely, that action by the board under either article 2 or article 3 to assert a deficiency extends the time within which the taxpayer must initiate proceedings to recover taxes erroneously paid by him under the self-assessment provisions of chapter 5, article 1, *supra*. The board's ultimate conclusion that Holland Furnace had paid too much was not a determination "made under" article 2 or 3 of chapter 5, and hence the refund claimed was not a refund "with respect to" such a determination. Consequently, the claim for refund of November 14, 1957, which Holland Furnace says was within the time specified in the second part of section 6902, was not within that part at all.

The foregoing analysis does not, as respondent asserts, make meaningless the third part of section 6902 (numbered (3) by us). The Legislature evidently recognized that, where there is a scheme of self-assessment, there will be late filings and late payments by some taxpayers, for a variety of reasons,

legitimate or illegitimate, and that when the board determines under article 2 or 3 of chapter 5 that there is a deficiency, payment may be made after the determination becomes final. It therefore provided, in the third part of the section, that the taxpayer has at least six months after he makes an actual payment within which to seek a refund, whether the payment be under the self-assessment provisions of the code or the deficiency provisions. Thus the lateness of the payment, whatever the reason or the time involved, does not deprive the taxpayer of a refund to which he would otherwise be entitled.

The third part of the section, however, is obviously of no help to respondent here.

The facts being stipulated, there is no need for a further trial. The judgment is reversed with directions to the trial court to enter judgment for the appellant.

Bray, P. J., and Tobriner, J., concurred.